Good morning, Judge Braber, Judge Bybee, and Judge Christin. My name is Timothy Bellis, and I represent the appellant, Mr. Yong Ming Song, in this matter. If it please the court and opposing counsel, I would like to begin my argument by focusing a little bit on the facts, as they are significant to the legal arguments that Mr. Song would like to make to this court. I'll begin first by emphasizing the fact that this is not a typical drug buy-bust operation. This was an operation which began with the drugs involved in this case being surrendered to the DEA agents on Saipan. And then the DEA arranged for these drugs to be obtained or picked up at a location, which was the, I'm going to omit the discussion of the Price-Costco aborted attempt and just focus on the bus stop where the drugs were picked up. One of the issues that I have tried to highlight in the brief is the fact that there was a certain route that was taken by Mr. Song after the drugs were picked up, the bag was placed inside the vehicle.  He did not, Your Honor. I mean, in the sense that, excuse me, I misspoke. He did choose the route, how to leave the area, yes. Nobody was directing him. There were no impediments. There were no officers directing traffic that would have diverted him from a route. No. So he chose the route. Yes, that's correct. Do we have anything in the record that tells us that? There's a statement to follow up on Judge Bybee's question. There's an assertion in the brief that he was going home. Yes. Where does that come from? There is some when after the arrest occurs, Mr. Song is interviewed and he indicates that he was on his way home and that the purpose of picking up the bag was he was transporting it to his home and then someone else in the future time was going to come and pick up the bag. Well, again, to go back to Judge Bybee's question, or I think his point, do we have anything in the record that tells us where his house is or how he was going to get there or whether there was another way to get there? No, we do not, Your Honor. That is something that trial counsel did not elicit from my recollection of the transcript. The basis of what I've just done in my answer to the question is that Mr. Song indicates when he is interviewed by the DEA agents after the arrest that I was proceeding to my house, I picked up the bag, and the arrangement was made, as you recall from the facts, what was termed the confidential informant made a phone call to China and China then contacted Mr. Song apparently and Mr. Song goes to the bus stop and picks up the bag. The significance of the Google images that I've asked the courts to take judicial notice of at Reply Excerpts of Record 9, 10, and 11 are the fact that it reveals the length of the route that Mr. Song took after he left the bus stop. If the court looks at Reply Excerpts of Record 9, at the very top of that excerpt you can see that until he reached what is Middle Road and then he made a right turn at that stoplight. He proceeded down Middle Road. Middle Road continues on to Excerpts of Record No. 10 until it reaches what's called Chalon-Monsignor-Guerrero Road, another stoplight at that location. This is in the testimony, in the record. And then he makes a right turn there and then he proceeds on to Beach Road, another stoplight, a third stoplight where he makes a left turn and then proceeds down on Reply Excerpts of Record No. 11. He proceeds to the very bottom of that page which is depicted on that page. And you can also see the same, like the track and field on the excerpts or the exhibits that were submitted by the government as part of the trial. So this is the route that he took and this unfortunately is the route that I've had to highlight to the court because of the reference in the opposing brief that this was a short distance or a few blocks. So how long was it? How far away from the pickup point was he? At the time that he was stopped, Your Honor, I mean this is based on my review of the route. It's in excess of two miles. Okay. Why does that make any difference? If he voluntarily, he didn't go into the school zone unconscious and somebody took him there. He voluntarily went to that location. So why does the distance make any difference? Well, Your Honor, my position on that is that the DEA, the reason I highlight the fact that this is a different situation, the crime was committed at the time that the bag was placed into the car. Therefore, the probable cause was available and the stop and arrest could have occurred at that point. It could have occurred as he's proceeding down. Well, it could have, but basically what you're saying is that there's a government obligation to stop you from committing a crime before you've committed it, in this case being in the school zone. It's true that had he been stopped sooner, he might not have had this problem, but that's kind of to me so what, I guess. Where's the legal principle that says that you have to stop someone from committing a crime before they've committed it when you're not inducing them in any way? Well, Your Honor, I think that the issue, there's a couple of issues there that we point out as factors to consider. One of them is that the way that this matter was set up, first of all, there's no indication in the record, no evidence presented that Mr. Song had any advanced connection to this bag that was turned in. He was not known to the person who turned the bag into the DEA. He had no intention of purchasing or selling any of the contents of the bag. He was merely told to go pick up the bag and take it to his house where he would subsequently be picked up by a third person. So in order to answer your question more directly, I think the issue is that the crime that was committed was the possession of a sufficient quantity to distribute that drug. The added enhancement of having it in the schoolyard is what we suggest. There are several factors that show that the law enforcement agents intended to enhance the penalty to Mr. Song by creating the stop in that location. Okay. And let's assume that they did so with wicked intent. And does that make any difference? Well, I think it does, Your Honor, because I think my argument, my legal argument, is that there should be such a thing as a transitory presence within the schoolyard zone. I think that a transitory presence means you have no intent to make a purposeful stop. So do you have to show, is the burden on you to show that the DEA stopped you in the school zone deliberately in order to enhance it? What if that just turned out to be a convenient place? The officers here also testified it wasn't until they saw the seatbelt, they felt like they had the grounds for doing the traffic stop. Well, I think, Your Honor, you know, the stock and trade of the prosecution is circumstantial evidence. And I think what we've tried to say in our brief is, first of all, the major crime was committed when the possession was taken of the bag, which the DEA knows contains a quantity of drugs. The second thing is the DEA agents also testified. I think I gave you complex questions. I think I gave you multiple questions, and I'm going to focus on just one question. Do you have to prove that they intended to stop you in the school zone? Or is the burden on the government to show that they would have, that was the best place for them to stop you? Who's got the burden here? Well, Your Honor, I don't think it's a burden on the defendant, obviously. If it's not a burden on the defendant, then haven't you sort of done indirectly what we have said that the government doesn't have to prove directly, that is that you intended to be in the school zone for the purpose of distributing drugs? No, because what I'm asking the court to do is to follow the footnote 9 in the Wake decision where the court said there is a possible exception to the mere presence standard and to say that this exception is what I've termed the transitory presence. But if we did that, or if we were tempted to do that, wouldn't we need a different record? It seems to me that we don't have anything that tells us about why the police officers initiated the stop, where they initiated it. Well, you know, my focus, Your Honor, with all due respect, would be the fact that Mr. Song was in a transitory phase of transiting that area. I know there are other cases that talk about the fact that you don't need to know that it's a school zone, but the question here is did Mr. Song voluntarily avail himself or intend to make a stationary stop in that location? Well, that's why I asked earlier about whether we have a record that tells us whether there was any other way to get to his house or whether he chose the route. I think it's pretty clear he chose the route. But there's a lot more, it seems to me, that we would need to know if we were going to make a ruling based upon your theory, which is that the police somehow, as judged by these, said with wicked intent, manipulated the situation so that the defendant was stopped where he was stopped. And I just want to be really upfront about that and give you an opportunity. Yes. Well, the only thing that I point to in my brief that I repeat here is that there are certain factors. One of those major factors is that at the time of their observation by the law enforcement agents, they assumed that Mr. Song was a known drug dealer whose nickname was Brother. And so, therefore, I'm suggesting to the court that both by placing and leaving this large amount of drugs in the bag, that they were intending to enhance the penalty by stopping him also in the drug zone because they were looking for the big bust. But then when they found out or they thought it was a known drug dealer, they tried to enhance it by making the stop in the thing. There is no investigative purpose. I think to answer, go back to Judge Beige's question, there's no investigative purpose by the stop taking place there. Some of the cases hold that if the buy is taking place there, if there's a residence there that he's returning to, if there's some other connection investigatively to the reason why the stop occurs there, then I think that's where my analysis would turn, is that the investigation had a legitimate reason for stopping him there, yet here there's this pretextual thing. I mean, the pretextual thing is if we needed probable cause aside from a large amount of drugs, then wouldn't the speeding, the officer also testified, that he was speeding from the time he left the pickup zone. Counsel, you've exceeded your time, but we used a lot of it with questions, so you may have a minute for rebuttal when the time counts. All right. Thank you, Your Honor. We'll hear from the government. Good morning. Garth Backey for the United States. Just to be clear, I was not trial counsel or appellate counsel. I'm stepping in. I probably will be unable to answer certain questions, but I am prepared to make arguments and answer most questions, but there will be very specific ones maybe behind the record that I will not be able to. Most of the questions you raised were arguments that I intended to make, so I'll just highlight a couple of points that I think are important to consider. This defendant was a stranger on that day. They did not know who was arriving, so when they set everything up through the phone call, I think if you go through the facts that the bag is dropped off, a series of phone calls are made, none of which are to the defendant. They set it up. The defendant arrives on the scene for the first time on the case, so they have no background information of what's going to happen after he arrives. Now, I know some of them recognized him as a drug dealer on Saipan. There's the first attempted transaction at Costco. They then move the bag to the bus stop. Very important. That is not in the school zone. He then makes a voluntary decision to retrieve the bag. He makes a series of voluntary decisions, which is the right turn on Quartermaster, the right turn on Mill Road, the right turn on Monsignor, and the left turn on Beach. Those were all his decisions to make. As Judge Bobby pointed out or asked about, there was no steering. There was no advanced knowledge. But it is true that had he been stopped sooner, he would never have gotten to the school zone. If he'd been stopped a mile before the school, he wouldn't have gotten to the school zone. So is there even theoretically any exception that we could or should read into the statute? And if so, does it apply? Just to be clear, I'm not 100 percent sure that it would be that case because Saipan is a small island. There are numerous schools. So he could have passed a different one at some point in time. Well, he didn't, at least according to this map. And I'm not sure, but I think that Mill Road continues on. He would not have had to turn in that place, which is true. But you're kind of avoiding my question a little bit. It seems that he could have been stopped before he got to this school zone, and he wasn't. So is there any theoretical reason why that would make a difference? I don't believe so, and if I may take the extreme position just to prove this one. But I think that they could have, since he was a stranger, they didn't know where he was going, I think the law would have supported them following him, intentionally waiting for him to get to the school zone and then making the arrest. Now, that's not what our position is, but to just say that that would probably be legally sufficient because there's no orchestration, there's no inducement, that's his propensity, that is his route. What if they had followed him through the school zone, out of the school zone, and then arrested him in the driveway of his house? I still think he could be charged for 860. The second he entered the school zone, it's possession with intent to distribute, which is a continuing offense. And I believe the second he entered the 1,000-foot zone to the minute he left it, he was violating that statute. And I disagree with Appellant in his reply before he says that we were required to stop him in that zone. I don't think that's true. I think he could have passed straight through, we could prove it circumstantially a trial. Weaker case, of course, but I don't see there's no requirement that he be stopped there for us to charge him with possession with intent. Because we've actually held that you don't even need to know it is a school zone. That's right. It's not quite strict liability, but it's something very close to that. Yes, and the cases that are cited by both briefs go over the legislative history. But it's important to point out a lot of courts say we don't even need to get there because it's very clear from the wording of the statute. But when you do go there, then it's unquestionable. And there's legislative history from now Vice President Biden saying that when they added possession with intent to distribute in 88, the point was to apply enhanced penalties to those that are apprehended or bring drugs into the school zone. So they were creating just this place where if you penetrate it with drugs, then you will receive an enhanced penalty regardless of whether you know so or not. So I don't think the statute provides for the exception that's being asked for. No court has recognized this exception that he's asking for. And most importantly, this case, the facts, the record, is not the case for really to be exploring the exception in the first place. And I have nothing further if anyone has any further questions. I don't believe that you do. Mr. Beallis, you may have a minute for rebuttal. Thank you, Your Honor. I think to return back to the issue of voluntariness, because the court has made that an issue with regard to the route that Mr. Song took, and I think that where I would focus that issue of voluntariness is the stop. I think what I propose and what Mr. Song is arguing to the court is that his stop in the school zone was not voluntary. Well, it's not, but after round, you know, the police can use almost any traffic pretext for stopping, even if they have some other motive in mind. And you can be stopped at almost any place. If he's not wearing his seat belt, he can be stopped at any place along the route where he's not wearing his seat belt. That's true, Your Honor. And as I said, I don't know. The prosecution seems to be arguing one of the issues I was going to bring up in our direct argument was that what if he had, Your Honor, or what the prosecution has conceded, what if he had passed through the zone and he was arrested at his hazardous residence? Why wouldn't that, if you had, say, a photograph of him in his car going through the school zone so you could prove that that's where he went, why wouldn't that support a conviction? Well, Your Honor, that is the gist of my brief, and the gist of my brief is I concede that there are all these cases that have expanded the idea of mere presence. There's Han, there's the case from the Walker from the 9th Circuit, and they all kind of expand the concept of, you know, the school doesn't need to be in session under Han. The under Walker that you don't need to show that he intended to distribute the drugs within the zone. So I concede all of those issues, but my point is that there ought to be something, there ought to be some symmetry and some balance to this concept. If we agreed with your argument, it would lower the range from 188 to 236 to 151 to 188, is that correct? That's correct. And your client got 188. That's correct. You got the upper range of the lower, I mean, you got the upper end of the lower range, you got the lower end of the upper range. I mean, it looks like the argument may have been made to the district judge who said, okay, it's not the most powerful case for punishing somebody, but you actually got a sentence within the range that you seek. Well. You're at the upper end of it. Sort of, Your Honor. I mean, of course, there is the issue that this was the one and only charge that was charged against the defendant, and so therefore, while I have made the default argument about the sentencing, I think that the issue is it's the one and only charge, and if the element was induced, and if the court. . . You're saying he wasn't guilty at all. That's correct, Your Honor. And therefore, you shouldn't be saying. . . What I'm saying is that if we find that it was a transitory presence and that we don't want to condone the kind of conduct that would allow law enforcement to continually maneuver the situation and the facts in order to place a higher penalty on any person that they believe in their judgment deserves that higher penalty, then I think that this doctrine has some utility and some justice to it. Thank you, counsel. Thank you, Your Honor. We appreciate the arguments of both counsel. The case is submitted.
judges: Graber, Bybee, Christen